**United States District Court**
**District of Massachusetts**

```
_____
                               )
Ama Asantewaa,                 )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )          Civil Action No.
Denis R. McDonough, in his     )          20-11689-NMG
official capacity as United States )
Secretary of Veterans Affairs, et )
al.,                           )
                               )
          Defendants.          )
_____)
```

**MEMORANDUM & ORDER**

This case arises out of several allegedly discriminatory and retaliatory actions taken against plaintiff Ama Asantewaa ("Asantewaa" or "plaintiff") by her employer, the Department of Veterans Affairs (the "Department" and together with Denis McDonough, "defendants"). Pending before the Court is defendants' motion for summary judgment on all of plaintiff's claims.

I.    **Background**

      A.    **The Parties**

Defendant Denis Richard McDonough ("McDonough") is Secretary of Veterans Affairs.[1]  Defendant Department of Veterans

---

[1] Pursuant to Fed. R. Civ. P. 25, Denis McDonough, as successor to Robert Wilkie as Secretary of Veterans Affairs, is

Affairs is a department of the executive branch of the United States government.

Plaintiff Ama Asantewaa is a resident of Dracut, Massachusetts.  She identifies as black.

### B.   Plaintiff's Employment at the Department of Veterans Affairs

Plaintiff was hired by the Department as a Registered Nurse II at the Edith Nourse Rogers Memorial Veterans Hospital ("the Hospital") in Bedford, Massachusetts, in 2007.  In 2018 and 2019, plaintiff applied for three Nurse Manager positions. Nurse Managers supervise other nurses and manage units at the Hospital.  Plaintiff was not offered any of the three Nurse Manager positions for which she applied.

### C.   The 2018 Non-Selection

In July, 2018, the Hospital posted an opening for a Nurse Manager position in the Memory Care Unit.  Plaintiff applied for that job but, on October 26, 2018, she was informed by email that she had not been selected.

---

automatically substituted for the latter as defendant in this action.

### D.    The First 2019 Non-Selection

In March of 2019, the Hospital posted an opening for a Nurse Manager position in the Geriatric Psychiatry Unit. Plaintiff applied for that job.  The Hospital selected plaintiff and two other women, Kim Wightman ("Wightman") and Jackie Honnors ("Honnors") to interview for the position.  Plaintiff, Wightman, and Honnors were interviewed by a panel comprised of Connie Bartlett Duda ("Bartlett Duda"), Associate Chief Nurse of Mental Health, Nicole Marcinuk, Acute Psych Nurse Manager, and Stacy Tsionis, a Registered Nurse Clinical Instructor.

None of the interviewed candidates was offered the Nurse Manager position.  Instead, Mary Anderson, Associate Director of Patient Care/Nursing Services ("Anderson") appointed Bartlett Duda to fill the vacancy.

### E.    The Second 2019 Non-Selection

Also in 2019, Plaintiff applied for the Nurse Manager position in the Hospital's Long Term Care Unit.  Plaintiff, Honnors, and Nasreen Shaikh ("Shaikh") were selected to interview with Barbara Mueller and Karen Harkins, both Nurse Managers, and Casey Blanchette, a Coordinator.  Interviews were completed in June, 2019.

-3-

Plaintiff was not offered the Nurse Manager position but
Honnors was offered and accepted the position.  The parties
dispute whether it was first offered to Shaikh and then, after
Shaikh declined, to Honnors, or to Honnors in the first
instance.

Shortly after the third non-selection, plaintiff contacted
a Department Equal Employment Opportunity ("EEO") counselor in
July, 2019.  Plaintiff alleged that, in not selecting her for
any of the three Nurse Manager positions, the Hospital had
discriminated against her because of her race and retaliated
against her for protected activity, namely, her previous filing
of several EEO complaints.

### F.    The Alleged Retaliation

Plaintiff has identified eight separate, allegedly
retaliatory actions taken by the Hospital after her July, 2019,
contact with the EEO counselor.  These actions are: 1) a "fact
finding" regarding a patient seizure on August 8, 2019, 2) a
"fact finding" regarding Plaintiff's interaction with a co-
worker on October 25, 2019, 3) a "fact finding" regarding
Plaintiff's alleged failure to follow instructions with respect
to the completion of rounds on February 14, 2020, 4) an
accusation on November 3, 2019, that she had time sheets at
home, 5) questioning on December 25, 2019, about how she handled

-4-

an incident concerning a late employee, 6) questioning on
January 31, 2020, about her notes and "numerous other items," 7)
an "undermin[ing]" of Plaintiff's authority with respect to
documenting time and attendance of employees in her unit on
March 1, 2020, and 8) a letter dated July 29, 2020, from the
Hospital stating that it was considering reporting plaintiff to
the State Licensing Board ("the Board") with respect to the
settlement of a tort claim brought against the Hospital under
the Federal Tort Claims Act and naming, inter alia, plaintiff.

No discipline issued from the first seven actions.  With
respect to the eighth, the Hospital had previously filed a
report with the National Practitioner's Data Bank ("the NPDB")
on June 10, 2020, concerning the settlement of the tort claim,
as it had been required to do by the Office of Medical and Legal
Affairs.  Contemporaneously with that report and as required by
Department directive and NPDB regulation, the Hospital had filed
a copy of that report with the Board.  After learning that the
Board was already aware of the settlement because of the June
10, 2020 filing, the Hospital rescinded its letter to plaintiff.
The report has not yet resulted in any further action but
plaintiff claims that a Board investigation remains "ongoing and
active".

G.    Procedural History

On October 8, 2019, plaintiff filed a formal discrimination complaint with the Department of Veterans Affairs Office of Resolution Management ("ORM") with respect to the claims she raised with the EEO counselor in July, 2019.  In August of 2020, plaintiff informed ORM that she no longer desired an administrative hearing and ORM dismissed plaintiff's complaint pursuant to 29 C.F.R. § 1614.107(a)(3).

On September 14, 2020, plaintiff filed the present action. Defendants moved for summary judgment on November 18, 2020.

II.  <u>Motion for Summary Judgment</u>

A.    Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law." Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).  A genuine issue of material fact
exists where the evidence with respect to the material fact in
dispute "is such that a reasonable jury could return a verdict
for the nonmoving party."  Id.

If the moving party satisfies its burden, the burden shifts
to the nonmoving party to set forth specific facts showing that
there is a genuine, triable issue.  Celotex Corp. v. Catrett,
477 U.S. 317, 324 (1986).  The Court must view the entire record
in the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor.  O'Connor v.
Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law.  Celotex Corp., 477 U.S. at 322-23.

### B.  Arguments of the Parties

Plaintiff contends that defendants discriminated against
her on the basis of her race in not selecting her for the three
Nurse Manager positions.  In addition, plaintiff argues that the
non-selections and the eight subsequent actions taken by

-7-

defendants were retaliation for her previous complaints of racial discrimination.

Defendants rejoin that plaintiff's administrative claim with respect to the 2018 non-selection is unexhausted.  With respect to the 2019 non-selection claims, defendants contend that a jury could not reasonably find that the stated reasons for the selections of other candidates were pretext for discrimination.  Finally, as to the retaliation claims, defendants argue that the challenged actions did not carry any tangible consequences and were not causally connected to plaintiff's protected activity.  For those reasons, defendants seek summary judgment on all of plaintiff's claims.

### C.  Analysis

#### 1.  Count I – Title VII Racial Discrimination

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1). Where, as here, "direct proof" of discriminatory animus is not alleged, plaintiff's discrimination claims are analyzed under the standard expounded by the Supreme Court in McConnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).  Ray v. Ropes & Gray, LLP, 799 F.3d 99, 113 (1st Cir. 2015).

-8-

Under McConnell Douglas, the plaintiff first must make out a prima facie case of racial discrimination. McConnell Douglas, 799 U.S. at 802. To do so, the plaintiff usually must demonstrate that 1) she is a member of a protected class, 2) she is qualified for the job, 3) she suffered an adverse employment action from her employer, and 4) there is evidence of a causal connection between her membership in the protected class and the adverse employment action. Bhatti v. Trustees of Boston University, 659 F.3d 64, 70 (1st Cir. 2011). These requirements are not "intended to be rigid, mechanized, or ritualistic", however, and "can vary depending on the context". Caraballo-Caraballo v. Correctional Administration, 892 F.3d 53, 58 (1st Cir. 2018) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)).

Next, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action at issue. McConnell Douglas, 411 U.S. at 802. If the defendant succeeds in discharging its McConnell Douglas burden, the scales are re-balanced, and the plaintiff must "offer some minimally sufficient evidence, direct or indirect, both of pretext and of discriminatory animus" to survive summary judgment. Thiedon v. Harvard Univ., 948 F.3d 477, 497 (1st Cir. 2020) (quoting Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 40 (1st Cir. 2013)).

-9-

Pretext can be shown in numerous ways, including disparate treatment of similarly situated employees, Ray, 799 F.3d at 114, as well as an employer's changing explanations for an adverse employment action, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431-32 (1st Cir. 2000), deviations from standard policies and procedure, Thiedon, 948 F.3d at 497.  It may also be shown by "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons," Santiago-Ramos v. Centennial P.R. Wireless Corp, 217 F.3d 46, 56 (1st Cir. 2000), or racially derogatory remarks, Ray, 799 F.3d at 116.  Insufficient, though, is evidence that merely questions the accuracy or the business judgment of the employer.  Thiedon, 948 F.3d at 499.

In addition to pretext, the plaintiff must show discriminatory animus.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (explaining that the plaintiff bears "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff").  Thus, if the plaintiff offers evidence that the defendant's stated reasons for the action or actions at issue were pretextual, that evidence must be sufficient to "enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." Velez v. Thermo King de P.R., Inc.,

-10-

585 F.3d 441, 452 (1st Cir. 2009) (internal punctuation omitted).

Here, arguments of counsel center on whether plaintiff has furnished sufficient evidence of pretext and animus to avoid summary judgment. Defendants assume, but do not concede, that plaintiff can make a prima facie case of racial discrimination with respect to the 2019 non-selection claims. Plaintiff, for her part, does not argue that defendants have failed to offer a legitimate business purpose for their actions. Because the Court ultimately finds that plaintiff has not submitted sufficient evidence to forestall summary judgment, it does not address whether the parties have satisfied their respective McConnell Douglas burdens.

### a.   The 2018 Non-Selection

Plaintiff alleges that her 2018 non-selection for the Nurse Manager position in the Memory Care Unit constituted racial discrimination. Defendants reply that it did not and that plaintiff's claim was untimely in any event. For those reasons, defendants submit that summary judgment should issue.

"It is settled that a federal court will not entertain employment discrimination claims brought under Title VII unless administrative remedies have first been exhausted." Rodriguez v. United States, 852 F.3d 67, 78 (1st Cir. 2017). Exhaustion

-11-

of an EEO claim requires an aggrieved person to "initiate contact" with an EEO counselor within 45 days of the allegedly discriminatory act.  29 C.F.R. § 1614.105(a)(1).  Because administrative exhaustion is a condition of the waiver of sovereign immunity, it "must be strictly construed."  Farris v. Shinseki, 660 F.3d 557, 563 (1st Cir. 2011) (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 94 (1990)).

Here, the parties do not dispute that plaintiff failed to bring her claims with respect to the 2018 non-selection to the attention of an EEO counselor within 45 days of the non-selection.  Thus, plaintiff's claims were not exhausted.  While Title VII's time limits may be equitably tolled in "exceptional circumstances," see id. at 563-64, plaintiff has not offered any reason for her delay in filing that could support equitable tolling.

Accordingly, defendants' motion for summary judgment will be allowed with respect to the 2018 non-selection claim.

### b.  The First 2019 Non-Selection

With respect to the first 2019 non-selection, defendants aver that plaintiff has not identified evidence of pretext or animus in the Hospital's hiring of Bartlett Duda to fill the Nurse Manager position in the Geriatric Psychiatry Unit.  As a

result, defendants contend, they are entitled to summary judgment with respect to the first 2019 non-selection.

In support of her contention that the first 2019 non-selection was discriminatory, plaintiff argues that the selection of Bartlett Duda was made not because she was the best candidate but rather because she was "at odds" with a co-worker in her prior role. Plaintiff has not adduced sufficient evidence to permit a reasonable jury to return a verdict in her favor. Regardless of whether plaintiff has offered enough evidence for a jury to find that Bartlett Duda was selected for the Nurse Manager position due to problems with a co-worker, plaintiff's theory, if proven, would only show pretext and not discriminatory animus.

Plaintiff does not offer other evidence of pretext or animus in the hiring of Bartlett Duda. Therefore, the Department's motion for summary judgment will be allowed with respect to the first 2019 non-selection claim.

### c.   The Second 2019 Non-Selection

As to the second 2019 non-selection, Defendants again assert that Plaintiff has not identified evidence of pretext or animus in the Hospital's hiring decision, i.e. the selection of Honnors for the Nurse Manager position in the Long Term Care

Unit.  Consequently, Defendants contend, they are entitled to
summary judgment with respect to the second 2019 non-selection.

Plaintiff rejoins that the interview process for the Long
Term Care Nurse Manager position was, essentially, a sham meant
to conceal the predetermined award of the position to Honnors.
Plaintiff further submits that she was substantially more
experienced than Honnors, that Honnors was not otherwise a
suitable candidate and that Anderson's testimony was not
credible.

In support of these arguments, Asantewaa first points to a
memorandum signed by Glen Hevy ("Hevy"), a Hospital employee,
dated June 21, 2019.  That memorandum purported to offer Honnors
the Nurse Manager position and stated, contrary to the
undisputed facts, that Honnors was a direct hire and was
interviewed by Anderson.  Because Shaikh was not offered the
Nurse Manager job until June 24, 2019, plaintiff asserts that
the offer to Shaikh was not bona fide but rather an attempt to
disguise the earlier hiring of Honnors.  Defendants counter that
the discovery record does not support plaintiff's conclusion.
The record contains an email from the Hospital to Shaikh on July
24, 2019, offering her the position, as well as deposition
testimony from Anderson that Shaikh had been offered the

-14-

position first and refused it.  It does not contain testimony
from either Shaikh or Hevy.

Second, Asantewaa states that she had been a registered
nurse and employed at the Hospital longer than Honnors.  While
Honnors had management experience and plaintiff did not,
plaintiff argues that the reason she did not have management
experience was Anderson's failure to consider her for a detail
to a management position.  Defendants do not dispute that
plaintiff had been a registered nurse and at the Department
longer than Honnors, or that Honnors' management experience was
a factor in the hiring decision.  They deny, however, that
plaintiff was not offered management training and point to
testimony by Anderson that plaintiff had not wanted to take an
assistant Nurse Manager position because it would require her to
work day shifts instead of night shifts and thus forgo the ten
percent pay differential for night shifts.

Third, plaintiff asserts that Honnors was not a suitable
candidate because her interview scores for the Geriatric
Psychiatry Nurse Manager position were lower than plaintiff's.
Plaintiff also claims that EEO complaints brought against
Honnors rendered her unsuitable for the position.  Defendants
maintain that Honnors' interview scores for the Geriatric
Psychiatry position were irrelevant to the hiring decision for

-15-

the Long Term Care position because Honnors' interview scores
for the latter were higher than plaintiff's.  Defendants further
submit that plaintiff has provided no evidence regarding the
nature of the complaints against Honnors, one of which was
brought by plaintiff.

Finally, Asantewaa challenges Anderson's credibility.  She
cites a 2019 affidavit of Dan Berlowitz, Chief of Staff of the
Hospital, concerning the reassignment of a black Nurse Manager
("the Berlowitz affidavit").  The Berlowitz affidavit states
that the reassignment decision "was taken following discussions
and in conjunction with the Hospital director, Joan Clifford,
and the Nursing Executive, Mary Anderson" but does not further
detail Anderson's involvement.  Plaintiff also claims that
Anderson testified that she had never involved herself in the
interview process, yet involved herself in that process in
another, unrelated case.  Defendants submit that the affidavit
contains no evidence that would undermine Anderson's
credibility.  In addition, they cite Anderson's deposition
testimony, in which she testified that she does not usually (not
"never") involve herself in the interview process.  In sum,
defendants assert, plaintiff has not offered sufficient evidence
to discredit Anderson, nor to show a genuine dispute of material
fact with respect to the second 2019 non-selection.

Asantewaa's first argument, that the memorandum dated June
21, 2019, demonstrates that the hiring process for the Long Term
Care Nurse Manager position was rigged in Honnors' favor, is
tenuous.  The only evidence that plaintiff offers in support of
that theory is the June 21, 2019, date on the memorandum
purporting to offer the position to Honnors.  Plaintiff has not
offered any supporting evidence that would tend to show 1)
Honnors was offered the job before or in lieu of Shaikh, 2) the
June 24, 2019, offer to Shaikh was either mistaken or
disingenuous or 3) the falsity of the deposition testimony of
Anderson that Shaikh was offered the position first.

The First Circuit has explained that

> [w]hile the summary judgment mantra requires us to draw
> every reasonable inference in favor of the nonmoving party,
> inferences, to qualify, must flow rationally from the
> underlying facts, [that is,] a suggested inference must
> ascend to what common sense and human experience indicates
> is an acceptable level of probability.

Medina-Rivera v. MVM, Inc., 713 F.3d 132, 137 (1st Cir. 2013)
(quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731,
743 (1st Cir. 1995)), see also Ellis v. Fidelity Management
Trust Co., 883 F.3d 1, 7 (1st Cir. 2018) (explaining that "[t]he
test for summary judgment is steeped in reality . . . . We have
interpreted Rule 56 to mean that the evidence illustrating the
factual controversy cannot be conjectural or problematic . . . .

[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation") (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Here, plaintiff demands more of the memorandum than it can reasonably bear.  Absent additional supporting evidence not presented in this case, no reasonable jury could find that a memorandum undisputedly containing significant factual errors and squarely contradicting the rest of the documentary and testimonial evidence proved that there was a ploy summarily to offer the Nurse Manager position to Honnors.

Plaintiff's subsequent arguments either merely question the business judgment of the Hospital or rest on insufficient evidence.  Asantewaa states that Honnors' scores in her interview for the Geriatric Psychiatry Nurse Manager position and her shorter tenure as a nurse made Honnors a less qualified candidate.  It is undisputed, however, that Honnors possessed more management experience than plaintiff and scored higher on the interview for the Long Term Care Nurse Manager position, i.e. the position at issue here.  Plaintiff's other contentions lack sufficient evidentiary support.  She has failed to provide any detail with respect to the EEO complaints brought against Honnors, including the complaint she herself brought.  Absent additional information with respect to such complaints and their

-18-

resolution, a reasonable jury could not conclude that the complaints rendered Honnors unqualified for the Nurse Manager position. Finally, while Plaintiff argues that she was denied the opportunity to gain management experience, she has neither proffered affirmative evidence of that fact nor attempted to rebut deposition testimony of Anderson that she did not want to lose the pay differential afforded to night shift workers by taking a daytime assistant Nurse Manager position. See Anderson, 477 U.S. at 257 (requiring that plaintiff present affirmative evidence to defeat a properly supported motion for summary judgment).

Plaintiff's fourth argument, concerning Anderson's credibility, is equally unavailing. "[A] mere challenge to the credibility of a movant's witnesses without any supporting evidence does not raise a trialworthy issue of fact." Moreau v. Local Union No. 246, Intern. Broth. of Firemen and Oilers, AFL-CIO, 851 F.2d 516, 519 (1st Cir. 1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)). Rather,

> absent specific facts discrediting testimony from a witness associated with the movant, and absent a direct conflict in the testimony, the opponent (although entitled to have [her] evidence taken as true), is not entitled to have the moving party's evidence positively disbelieved.

Grubb v. KMS Patriots, L.P., 88 F.3d 1, 5 (1st Cir. 1996). Here, plaintiff has not adduced specific facts discrediting

Anderson's testimony.  Furthermore, she has not identified any
discrepancies in Anderson's testimony in the instant case that
would give rise to a trialworthy issue of fact concerning the
non-selections.  See id.

Finally, plaintiff argues that the absence of black
employees in supervisory roles at the Hospital demonstrates the
discriminatory intent of Hospital leadership, including
Anderson.  The First Circuit has held that few or no black
employees in leadership roles does not necessarily give rise to
a genuine issue of material fact as to an employer's
discriminatory animus.  Hicks v. Johnson, 755 F.3d 738, 747 (1st
Cir. 2014).  Though the facts of this case are not identical to
Hicks, the Court finds that the record similarly does not
"permit any reasonable conclusion" about disparity in
opportunities for black employees based on the hiring statistics
alone.  Id.

### 2.   Count II – Retaliation

Title VII makes it unlawful for an employer to retaliate
against an employee because she "has opposed any practice made
an unlawful employment practice . . . ., or because [s]he has
made a charge, testified, assisted, or participated in any
manner in an investigation, proceeding, or hearing".  42 U.S.C.

-20-

§ 2000e-3, see Fantini v. Salem State College, 557 F.3d 22, 31-32 (1st Cir. 2009).

To establish a prima facie case of retaliation, plaintiff must show that 1) she engaged in protected conduct, 2) she suffered an adverse employment action and 3) that a causal nexus exists between the protected conduct and the adverse action. Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 39 (1st Cir. 2020).

An employment action is adverse when it would "dissuade a reasonable worker" from engaging in protected activity.  Lestage v. Coloplast Corp., 982 F.3d 37, 48 (1st Cir. 2020) (internal punctuation omitted) (quoting Rodríguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 284 (1st Cir. 2014)).  It

> typically involves discrete changes in the terms of employment, such as reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

Id. at 40 (internal punctuation omitted) (citing Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 314 (1st Cir. 2016).  Because places of work

> are rarely idyllic retreats . . . . the mere fact that an employee is displeased by an employer's act or omission does not elevate that omission to the level of a materially adverse employment action.

-21-

Garmon, 844 F.3d at 314, see also Planadeball v. Wyndham
Vacation Resorts, Inc., 793 F.3d 169, 176 (1st Cir. 2015)
(explaining that "[p]etty slights" and "minor annoyances" that
often take place at work fall outside of the scope of anti-
discrimination law).  Rather, the action "must be more
disruptive than a mere inconvenience or an alteration of job
responsibilities."  Garmon, 844 F.3d at 314 (quoting Morales-
Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010)).

Plaintiff has not offered evidence sufficient for a jury to
find that she suffered an adverse employment action.  The first
seven allegedly retaliatory incidents resulted in no discipline
or alteration of plaintiff's job responsibilities.  Therefore,
they did not carry sufficient material consequence to constitute
adverse employment actions.  See Bhatti v. Trustees of Boston
University, 659 F.3d 64,73 (1st Cir. 2011) (holding that "a
criticism that carries with it no consequences is not materially
adverse and therefore not actionable").  As a result, the
defendants are entitled to summary judgment with respect to
these claims.

With respect to the final action, the July 29, 2020, letter
stating that the Hospital was considering whether to report
plaintiff to the Board, plaintiff has failed to offer evidence
showing a "causal nexus" between that letter and her protected

activity.  Moreover, because the letter from the Hospital had been sent to plaintiff after the report at issue had been received by the Board, any subsequent report would have been merely duplicative and would not have "dissuade[d] a reasonable worker" from engaging in protected activity.  Lestage, 982 F.3d at 48.

In addition to the eight allegedly retaliatory actions, Asantewaa claims that her non-selection was retaliation for "numerous prior EEO complaints".  Non-selection would constitute an adverse action.  See Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002).  Plaintiff has not offered evidence, however, showing a "causal nexus" between the prior complaints and the non-selections.  Rather, for the reasons discussed in Part IV(C)(1), the evidence does not support the conclusion that the Hospital's reasons for its hiring decisions were anything but as stated.

**ORDER**

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 17) is **ALLOWED**.

**So ordered.**

 /s/ Nathaniel M. Gorton  
Nathaniel M. Gorton  
United States District Judge

Dated September 22, 2021